**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

DANIEL OPPERMAN, on behalf of
himself and those similarly situated,

          Plaintiff,

   v.

APEX PIZZA HOLDINGS LLC,
HPG PIZZA I, LLC,
HPG PIZZA II, LLC,
DCT ENTERPRISES OF COLORADO,
LLC,
ROB PRANGE,
JIM PARRISH,
DOE CORPORATION 1-10, and
JOHN DOE 1-10,

        Defendants.

---

## CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND

---

    1.    Daniel Opperman on behalf of himself and similarly situated individuals, brings this action against Defendants Apex Pizza Holdings LLC; HPG Pizza I, LLC; HPG Pizza II, LLC; DCT Enterprises of Colorado, LLC; Rob Prange; Jim Parrish; Doe Corporation 1-10; and John Doe 1-10 ("Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Colorado Wage Claim Act ("CWCA"), C.R.S. § 8-4-101, *et seq.*, and the Colorado Minimum Wage Act ("CMWA"), C.R.S. § 8-6-101, *et seq.,* and unjust enrichment.

2.      Defendants own several Papa John's stores located in Colorado ("Defendants' Papa John's stores").

3.      Plaintiff seeks to represent the delivery drivers who have worked at the Defendants' Papa John's stores.

4.      Defendants repeatedly and willfully violated the Fair Labor Standards Act by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wages for all hours worked.

5.      Defendants have also repeatedly and willfully violated the Colorado Wage Claim Act, C.R.S. § 8-4-101, et seq., by taking unauthorized deductions from the delivery drivers wages and failing to pay all wage and compensation earned by the delivery drivers in a timely manner.

6.      Defendants have been unjustly enriched by their delivery drivers when the delivery drivers use their personal vehicles for the benefit of Defendants.

7.      Defendants have also violated Colorado wage and hour law by failing to provide meal breaks and rest breaks to delivery drivers at Defendants' Papa John's stores.

8.      All delivery drivers at the Defendants' Papa John's stores, including Plaintiff, have been subject to the same or similar employment policies and practices.

## JURISDICTION AND VENUE

9.  Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff' FLSA claims.

10.  Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

11.  Venue in this Court is proper under 28 U.S.C. § 1391(b) because Defendants reside in this district, and a substantial part of the events giving rise to the claim herein occurred in this district.

## PARTIES

**Plaintiff**

**Daniel Opperman**

12.  Plaintiff Daniel Opperman is a resident of Colorado.

13.  Plaintiff is an "employee" of the Defendants as defined in the FLSA.

14.  Plaintiff has given written consent to join this action.

**Defendants**

**Apex Pizza Holdings LLC**

15.  Defendant Apex Pizza Holdings LLC is a Delaware limited liability company authorized to do business under the laws of Colorado.

16.  Apex Pizza Holdings LLC maintains its principal place of business at 4201 Spring Valley Road, Suite 450, Dallas, TX 75244.

17.     Plaintiff's Check Stub Report, is issued by Papa Johns, 4201 Spring Valley, Dallas, TX 75244.

18.     Apex Pizza Holdings LLC has the same principal place of business as Defendants HPG Pizza I, LLC and HPG Pizza II, LLC.

19.     Defendant Jim Parrish is the President of Apex Pizza (Papa John's Franchisee) for Heritage Partners Group.

20.     Heritage Partners Group is "is an investment and operations platform that partners with the world's most enduring consumer brands."

21.     Upon information and belief, Apex Pizza Holdings LLC owns or partially owns or funds several Papa John's Pizza stores in Colorado with or for Heritage Partners Group.

22.     Upon information and belief, Apex Pizza Holdings LLC (with or for Heritage Partners Group) purchased multiple Papa John's Pizza stores in Colorado from DCT Enterprises of Colorado, LLC.

23.     Apex Pizza Holdings LLC has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

24.     Apex Pizza Holdings LLC has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

25.     At all relevant times, Apex Pizza Holdings LLC has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not

limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

26.     Apex Pizza Holdings LLC is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

27.     At all relevant times, Apex Pizza Holdings LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

28.     Apex Pizza Holdings LLC's gross revenue exceeds $500,000 per year.

**HPG Pizza I, LLC**

29.     Defendant HPG Pizza I, LLC, is a Delaware limited liability company authorized to do business under the laws of Colorado.

30.     HPG Pizza I, LLC, maintains its principal place of business at 4201 Spring Valley Road, Suite 450, Dallas, TX 75244.

31.     HPA Pizza I, LLC has the same principal place of business as Defendants Apex Pizza Holdings LLC and HPG Pizza II, LLC.

32.     Upon information and belief, HPG Pizza I, LLC, is an entity that operates the Defendants' Papa John's stores.

33.     Upon information and belief, HPG Pizza I, LLC, owns several Papa John's Pizza stores in Colorado.

34.     HPG Pizza I, LLC is registered under the trade name, "Papa John's Pizza" with the Colorado Secretary of State.

5

35.     Upon information and belief, HPG Pizza I, LLC, has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

36.     Upon information and belief, HPG Pizza I, LLC, has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

37.     Upon information and belief, at all relevant times, HPG Pizza I, LLC, has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

38.     HPG Pizza I, LLC, is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

39.     At all relevant times, HPG Pizza I, LLC, has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

40.     HPG Pizza I, LLC's, gross revenue exceeds $500,000 per year.

**HPG Pizza II, LLC**

41.     Defendant HPG Pizza II, LLC, is a Delaware limited liability company authorized to do business under the laws of Colorado.

42.     HPG Pizza II, LLC maintains its principal place of business at 4201 Spring Valley Road, Suite 450, Dallas, TX 75244.

43.     HPA Pizza II, LLC has the same principal place of business as Defendants Apex Pizza Holdings LLC and HPG Pizza I, LLC.

44.     Upon information and belief, HPG Pizza II, LLC, is an entity that operates the Defendants' Papa John's stores.

45.     Upon information and belief, HPG Pizza II, LLC, owns several Papa John's Pizza stores in Colorado.

46.     HPG Pizza II, LLC, has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

47.     HPG Pizza II, LLC, has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

48.     At all relevant times, HPG Pizza II, LLC, has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

49.     HPG Pizza II, LLC, is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

50.     At all relevant times, HPG Pizza II, LLC, has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

51.     HPG Pizza II, LLC's, gross revenue exceeds $500,000 per year.

7

**DCT Enterprises of Colorado, LLC**

52.     Defendant DCT Enterprises of Colorado, LLC, is a Texas limited liability company authorized to do business in the state of Colorado.

53.     DCT Enterprises of Colorado, LLC, maintains its principal place of business in Texarkana, Texas.

54.     Upon information and belief, DCT Enterprises of Colorado, LLC, is an entity that operates or has operated the Defendants' Papa John's stores within the relevant time period.

55.     Upon information and belief, DCT Enterprises of Colorado, LLC, owns or has owned several Papa John's Pizza stores in Colorado within the relevant time period.

56.     DCT Enterprises of Colorado, LLC, is the entity that appeared on Plaintiff's paystubs for work he completes for Defendants' Papa John's stores.

57.     DCT Enterprises of Colorado, LLC, has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

58.     DCT Enterprises of Colorado, LLC, has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

59.     At all relevant times, DCT Enterprises of Colorado, LLC, has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

60.     DCT Enterprises of Colorado, LLC, is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

61.     At all relevant times, DCT Enterprises of Colorado, LLC, has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

62.     DCT Enterprises of Colorado, LLC's, gross revenue exceeds $500,000 per year.

**Jim Parrish**

63.     Defendant Jim Parrish is the president of Apex Pizza Holdings LLC, and the Defendants' Papa John's stores.

64.     Upon information and belief, Jim Parrish resides in Atlanta, Georgia.

65.     Jim Parrish operates several Papa John's stores in Colorado.

66.     Jim Parrish is individually liable to the delivery drivers at the Defendants' Papa John's stores under the definitions of "employer" set forth in the FLSA because he owns and operates Defendants' Papa John's stores, serves as the president of Apex Pizza Holdings LLC, ultimately controls significant aspects of Defendants' Papa John's stores' day-to-day functions, and ultimately controls compensation and reimbursement of employees.  29 U.S.C. § 203(d).

67.     At all relevant times, by virtue of his role as president of the Defendants' Papa John's stores, Jim Parrish has had financial control over the operations at each of Defendants' Papa John's stores.

68.     At all relevant times, by virtue of his role as president of Defendants' Papa John's stores, Jim Parrish has a role in significant aspects of Defendants' Papa John's stores' day to day operations.

69.     At all relevant times, by virtue of his role president of Defendants' Papa John's stores, Jim Parrish has had control over Defendants' Papa John's stores' pay policies.

70.     At all relevant times, by virtue of his role as president of Defendants' Papa John's stores, Jim Parrish has had power over personnel and payroll decisions at Defendants' Papa John's stores, including but not limited to influence of delivery driver pay.

71.     At all relevant times, by virtue of his role as president of Defendants' Papa John's stores, Jim Parrish has had the power to hire, fire and discipline employees, including delivery drivers at Defendants' Papa John's stores.

72.     At all relevant times, by virtue of his role as president of Defendants' Papa John's stores, Jim Parrish has had the power to stop any illegal pay practices that harmed delivery drivers at Defendants' Papa John's stores.

73.     At all relevant times, by virtue of his role as president of Defendants' Papa John's stores, Jim Parrish has had the power to transfer the assets and liabilities of the Defendant entities.

74. At all relevant times, by virtue of his role as president of Defendants' Papa John's stores, Jim Parrish has had the power to declare bankruptcy on behalf of the Defendant entities.

75. At all relevant times, by virtue of his role as president of the Defendants' Papa John's stores, Jim Parrish has had the power to enter contracts on behalf of each of Defendants' Papa John's stores.

76. At all relevant times, by virtue of his role as president of Defendants' Papa John's stores, Jim Parrish has had the power to close, shut down, and/or sell each of Defendants' Papa John's stores.

77. At all relevant times, by virtue of his role as president of Defendants' Papa John's stores, Jim Parrish had authority over the overall direction of each of Defendants' Papa John's stores and is ultimately responsible for their operations.

78. Defendants' Papa John's stores function for Jim Parrish's profit. Jim Parrish has influence over how Defendants' Papa John's stores can run more profitably and efficiently.

**Rob Prange**

79. Defendant Rob Prange is the Vice President of Operations of the Defendants' Papa John's stores.

80. Rob Prange is Vice President of Operations of HPG Pizza, Inc.

81. Upon information and belief, Rob Prange resides in Colorado.

82. Rob Prange operates several Papa John's stores in Colorado.

83.     Rob Prange is individually liable to the delivery drivers at Defendants' Papa John's stores under the definitions of "employer" set forth in the FLSA because he owns and operates Defendants' Papa John's stores, ultimately controls significant aspects of Defendants' Papa John's stores' day-to-day functions, and ultimately controls compensation and reimbursement of employees.  29 U.S.C. § 203(d).

84.     At all relevant times, by virtue of his role as Vice President of Operations of Defendants' Papa John's stores, Rob Prange has had financial control over the operations at each of Defendants' Papa John's stores.

85.     At all relevant times, by virtue of his role as Vice President of Operations of Defendants' Papa John's stores, Rob Prange has had a role in significant aspects of Defendants' Papa John's stores' day to day operations.

86.     At all relevant times, by virtue of his role as Vice President of Operations of Defendants' Papa John's stores, Rob Prange has had control over Defendants' Papa John's stores' pay policies.

87.     At all relevant times, by virtue of his role as Vice President of Operations of Defendants' Papa John's stores, Rob Prange has had power over personnel and payroll decisions at Defendants' Papa John's stores, including but not limited to influence of delivery driver pay.

88.     At all relevant times, by virtue of his role as Vice President of Operations of Defendants' Papa John's stores, Rob Prange has had the power to hire, fire and discipline employees, including delivery drivers at Defendants' Papa John's stores.

12

89.    At all relevant times, by virtue of his role as Vice President of Operations of Defendants' Papa John's stores, Rob Prange has had the power to stop any illegal pay practices that harmed delivery drivers at Defendants' Papa John's stores.

90.    At all relevant times, by virtue of his role as Vice President of Operations of Defendants' Papa John's stores, Rob Prange has had the power to transfer the assets and liabilities of the Defendant entities.

91.    At all relevant times, by virtue of his role as Vice President of Operations of Defendants' Papa John's stores, Rob Prange has had the power to declare bankruptcy on behalf of the Defendant entities.

92.    At all relevant times, by virtue of his role as Vice President of Operations of Defendants' Papa John's stores, Rob Prange has had the power to enter contracts on behalf of each of Defendants' Papa John's stores.

93.    At all relevant times, by virtue of his role as Vice President of Operations of Defendants' Papa John's stores, Rob Prange has had the power to close, shut down, and/or sell each of Defendants' Papa John's stores.

94.    At all relevant times, by virtue of his role as Vice President of Operations of Defendants' Papa John's stores, Rob Prange has had authority over the overall direction of each of Defendants' Papa John's stores and is ultimately responsible for their operations.

95.    Defendants' Papa John's stores function for Rob Prange's profit.

96.     Rob Prange has influence over how Defendants' Papa John's stores can run more profitably and efficiently.

**Doe Corporation 1-10**

97.     Upon information and belief, Defendants own, operate, and control other entities and/or corporations that also comprise part of Defendants' Papa John's stores, and qualify as "employers" of Plaintiff and the delivery drivers at Defendants' Papa John's stores as that term is defined by the FLSA.

98.     Upon information and belief, Apex Pizza Holdings LLC owns and/or operates, in whole or in part, a number of other entities that make up part of Defendants' Papa John's stores operation.

99.     Upon information and belief, HPG Pizza I, LLC, owns and/or operates, in whole or in part, a number of other entities that make up part of, Defendants' Papa John's stores operation.

100.     Upon information and belief, HPG Pizza II, LLC, owns and/or operates, in whole or in part, a number of other entities that make up part of, Defendants' Papa John's stores operation.

101.     Upon information and belief, Jim Parrish owns and/or operates, in whole or in part, a number of other entities that make up part of Defendants' Papa John's stores operation.

102.     Upon information and belief, Rob Prange owns and/or operates, in whole or in part, a number of other entities that make up part of the Defendants' Papa John's stores operation.

103.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**John Doe 1-10**

104.     Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Papa John's stores as that term is defined by the FLSA.

105.     Upon information and belief, Apex Pizza Holdings, LLC, has entered co-owner relationships with a number of his managers and business partners, and those individuals might also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Papa John's stores as that term is defined by the FLSA.

106.     Upon information and belief, HPG Pizza I LLC, has entered co-owner relationships with a number of his managers and business partners, and those individuals might also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Papa John's stores as that term is defined by the FLSA.

107.     Upon information and belief, HPG Pizza II LLC, has entered co-owner relationships with a number of his managers and business partners, and those individuals might also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Papa John's stores as that term is defined by the FLSA.

108.    Upon information and belief, DCT Enterprises of Colorado, LLC, has entered co-owner relationships with a number of his managers and business partners, and those individuals might also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Papa John's stores as that term is defined by the FLSA.

109.    Upon information and belief, Jim Parrish has entered co-owner relationships with a number of his managers and business partners, and those individuals might also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Papa John's stores as that term is defined by the FLSA.

110.    Upon information and belief, Rob Prange has entered co-owner relationships with a number of his managers and business partners, and those individuals might also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Papa John's stores as that term is defined by the FLSA.

111.    The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

## FACTS

### Class-wide Factual Allegations

112.    During all relevant times, Defendants have operated the Defendants' Papa John's stores.

113.    Plaintiff, and the similarly situated persons Plaintiff seeks to represent, are current and former delivery drivers at Defendants' Papa John's stores.

16

114.    All delivery drivers employed at Defendants' Papa John's stores over the last three years have had essentially the same job duties.

115.    When there are no deliveries to make, Defendants' delivery drivers are required to work inside Defendants' Papa John's stores cleaning up dishes, sweeping, making boxes, filling the ice container, and completing other duties inside the restaurant, as necessary.

116.    Plaintiff and similarly situated delivery drivers have been paid Colorado minimum wage minus a tip credit for the hours worked on the road for Defendants' Papa John's stores.

117.    The job duties performed by delivery drivers inside the store are not related to their tip-producing duties while they are out on the road making deliveries.

118.    Delivery drivers do not complete their inside job duties contemporaneously with their delivery job duties.

119.    The delivery drivers at Defendants' Papa John's stores work "dual jobs."

120.    Defendants require delivery drivers at Defendants' Papa John's stores to provide cars to use while completing deliveries for Defendants.

121.    Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

122.    Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline

17

expenses, automobile maintenance and parts, insurance, financing charges, licensing and registration costs, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

123.    Pursuant to such requirements, Plaintiff and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing, licensing, and registration charges, and incur cell phone and data charges all for the primary benefit of Defendants.

124.    Defendants' Papa John's stores reimbursed their delivery drivers based on a flat rate per delivery basis until approximately March 2021.

125.    Starting in approximately March 2021, Defendants' Papa John's stores started reimbursing their delivery drivers based on cents per mile.

126.    Defendants' reimbursement payments have no connection to the actual expenses incurred by the delivery drivers.

127.    Defendants' Papa John's stores do not track or record the delivery drivers' actual expenses.

128.    Defendants' Papa John's stores do not collect receipts from their delivery drivers related to the expenses they incur while completing deliveries.

129.    Defendants' Papa John's stores do not reimburse their delivery drivers based on the actual expenses the delivery drivers incur.

130.    Defendants' Papa John's stores do not reimburse their delivery drivers for the actual expenses delivery drivers incur.

131.    Defendants' Papa John's stores do not reimburse their delivery drivers at the IRS standard business mileage rate.

132.    Defendants' Papa John's stores do not reasonably approximate the delivery drivers' expenses.

133.    Plaintiff and similarly situated delivery drivers typically average 3-7 miles per round-trip delivery.

134.    Defendants' Papa John's stores' reimbursement payments result in reimbursements that are less than the IRS standard business mileage rate for each mile driven.

135.    According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

a.    2018: 54.5 cents/mile
b.    2019: 58 cents/mile
c.    2020: 57.5 cents/mile
d.    2021: 56 cents/mile
e.    2022 (Jan. 1- June 30): 58.5 cents/mile
f.    2022 (July 1-Dec. 31): 62.5 cents/mile

136.    The delivery drivers at Defendants' Papa John's stores have incurred even more in expenses than those contemplated by the IRS standard business mileage rate—*e.g.*, cell phone and data charges.

137.   As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA.

138.   The delivery drivers' unreimbursed expenses amount to unauthorized deductions under the CWCA and CMWA.

139.   Defendants have applied the same or similar pay policies, practices, and procedures to all delivery drivers at Defendants' Papa John's stores.

140.   Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

141.   Defendants have failed to properly take a tip credit from Plaintiff' wages and the wages of similarly situated employees because, after accounting for unreimbursed expenses, Defendants have paid delivery drivers a lower wage rate than they informed the delivery drivers they would be paid.

142.   Defendants have also failed to properly inform Plaintiff and similarly situated delivery drivers of the requirements for taking a tip credit. 29 C.F.R.§ 531.59.

143.   Defendants have willfully failed to pay federal and Colorado state minimum wage to Plaintiff and similarly situated delivery drivers at Defendants' Papa John's stores.

144.    Defendants did not permit delivery drivers to take an uninterrupted and duty-free unpaid meal break of at least 30 minutes for any shift that exceeded five consecutive hours of work.

145.    Neither the nature of the business activity nor any other circumstances rendered it impractical for Defendants to permit delivery drivers uninterrupted meal breaks.

146.    Defendants did not permit delivery drivers to take a 10-minute rest break for each 4 hours of work, or major fractions thereof.

147.    When the restaurant was slow, Plaintiff and the similarly situated delivery drivers would be permitted to step briefly outside to take a break, but these breaks were irregular, not timed, and often interrupted.

148.    Defendants have received a benefit by virtue of the delivery drivers using their own cars to complete deliveries—they do not have to incur the expense themselves.

149.    The delivery drivers have provided a benefit to Defendants in the form of saved automobile costs.

150.    It is unjust for Defendants to retain the benefit conferred on them by their delivery drivers by reimbursing only a portion of the business-related costs incurred by the delivery drivers.

### Plaintiff's Individual Factual Allegations

151.    Plaintiff works at the Papa John's store located on Fountain Mesa Road in Fountain, CO and has since approximately January 2021.

152.    In September 2021, Plaintiff was promoted to the position of general manager of the Fountain Mesa Road store. Plaintiff does not assert any claims based on his employment since being promoted to general manager.

153.    As a delivery driver, Plaintiff was paid Colorado minimum wage minus a tip credit for all hours worked.

154.    As a delivery driver, when Plaintiff was not delivering food, he worked inside the restaurant. His work inside the restaurant included prepping food, answering phones, cleaning the store, and completing other duties inside the restaurant as necessary.

155.    As a delivery driver, Plaintiff worked dual jobs.

156.    As a delivery driver, Plaintiffs inside duties were not related to his delivery duties.

157.    Plaintiff was paid $9.31 per hour for the hours he worked inside the store, which is less than the applicable 2021 Colorado minimum wage of $12.32.

158.    As a delivery driver, Plaintiff was required to use his own car to deliver pizzas.

159.    Plaintiff was reimbursed $1.00 per delivery until March 2021.

160.    Starting in March 2021, Plaintiff was reimbursed between $.24 and $.26 cents per mile based on the vehicle driven and miles per gallon that vehicle received.

161.    Plaintiff was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

162.     Plaintiff was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, licensing and registration costs, and other equipment necessary for delivery drivers to complete their job duties.

163.     Plaintiff has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, licensing and registration costs, and incur cell phone and data charges all for the primary benefit of Defendants.

164.     Defendants does not track the actual expenses incurred by Plaintiff.

165.     Defendants do not ask Plaintiff to provide receipts of the expenses he incurs while delivering pizzas for Defendants.

166.     Defendants do not reimburse Plaintiff based on his actual delivery-related expenses.

167.     Plaintiff is not reimbursed at the IRS standard mileage rate for the miles he drives while completing deliveries.

168.     Defendants do not reimburse Plaintiff based on a reasonable approximation of his expenses.

169.      In 2021, for example, the IRS business mileage reimbursement was $.56 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas.   http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates.   At   the   IRS

standard business mileage reimbursement rate, Defendants' policy under-reimbursed Plaintiff by $.32 per mile ($.56 - $.24). Considering Plaintiff's estimate of 7.5 miles per delivery, Defendants under-reimbursed him $2.40 per delivery ($.32 x 7.5 miles), and $2.40 per hour (2.5 deliveries per hour).

170.     Defendants failed to properly inform Plaintiff of the requirements for taking a tip credit.

171.     Defendants failed to properly take a tip credit from Plaintiff wages because, after accounting for unreimbursed expenses, Defendants took more of a tip credit than they informed Plaintiff they would be taking.

172.     Defendants failed to pay Plaintiff minimum wage as required by law.

173.     Defendants did not permit Plaintiff to take or inform Plaintiff of his right to an uninterrupted and duty-free 30-minute meal break during shifts that exceeded 5 hours even though it was not impracticable for them to do so.

174.     When Plaintiff was a delivery driver, prior to accepting his role as general manager, Defendants did not permit Plaintiff to take or inform Plaintiff of his right to 10-minute rest breaks for each 4 hours of work, or any major fraction thereof.

### Collective Action Allegations

175.     Plaintiff brings the First Count on behalf of himself, and all similarly situated current and former delivery drivers employed at the Defendants' Papa John's stores owned, operated, and controlled by Defendants nationwide, during the three years prior

to the filing of this Collective and Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

176.    At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decisions, policies, plans, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses.  Plaintiff' claims are essentially the same as those of the FLSA Collective.

177.    Defendants' unlawful conduct is pursuant to a company policy or practice.

178.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

179.    Defendants are aware or should have been aware that they are not permitted to pay employees a tipped wage rate for hours worked in a non-tipped capacity.

180.    Defendants are aware or should have been aware that they were obligated to actually pay the tipped wage rate that they informed Plaintiff and other delivery drivers that they would pay.

181.    Defendants are aware or should have been aware that federal law requires them to meet certain requirements for taking a tip credit from the wages of their employees.

182.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

183.    The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

184.    The FLSA Collective members are readily identifiable and ascertainable.

185.    In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

## Colorado Class Action Allegations

186.    Plaintiff brings the Second and Third Count under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at the Defendants' Papa John's stores in the State of Colorado between the date three years prior to the filing of the original complaint and the date of final judgment in this matter ("Wage Class").

187.    Plaintiff brings the Fourth Count and Fifth Count under Federal Rule of Civil procedure 23, on behalf of himself and a class of person consisting of:

> All current and former delivery drivers employed by Defendants at the Defendants' Papa John's stores in Colorado between the date six years prior to the filing of the original complaint and the date of final judgment in this matter ("Meal and Rest Break Class").

188.    Plaintiff brings Sixth Count under Federal Rule of Civil procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed at the Defendants' Papa

John's stores owned, operated, and controlled by Defendants in Colorado, between the date six years prior to the filing of the original complaint and the date of final judgment in this matter (the "Colorado Unjust Enrichment Class")(together with the Wage Class and Meal and Rest Break Class, the "Rule 23 Classes").

189.     Excluded from the Rule 23 Classes are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Classes.

190.     The number and identity of the members of the Rule 23 Classes are ascertainable from Defendants' records.

191.     The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each member of the Rule 23 Classes are determinable from Defendants' records.

192.     The benefits conferred by the Unjust Enrichment Class members and realized by Defendants are determinable from Defendants' records.

193.     For the purpose of notice and other purposes related to this action, the names and contact information of the members of the Rule 23 Classes are readily available from Defendants.

194.     Notice can be provided by means permissible under Rule 23 for the members of the Rule 23 Classes.

195.    The members of the Rule 23 Classes are so numerous that joinder of all members is impracticable.

196.    The disposition of the claims of the members of the Rule 23 Classes as a class will benefit the parties and the Court.

197.    There are more than 50 members of each of the Rule 23 Classes.

198.    Plaintiff's claims are typical of those claims which could be alleged by any class member in any of the the Rule 23 Classes, and the relief sought is typical of the relief which would be sought by each member of the Rule 23 Classes in separate actions.

199.    Plaintiff and the members of the Rule 23 Classes were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage, failing to properly claim a tip credit, failing to reimburse for expenses, taking unauthorized deductions, failing to pay earned wages, failing to provide meal and rest breaks, and being unjustly enriched by the drivers.

200.    Plaintiff and the members of the Rule 23 Classes have all sustained similar types of damages as a result of Defendants' failure to comply with the Colorado Wage Claim Act, C.R.S. § 8-4-101, *et seq.,* the Colorado Minimum Wage Act, C.R.S. § 8-6-101, *et seq.*

201.    Plaintiff and the Unjust Enrichment Class members have also unjustly enriched Defendants in the same way—by providing automobiles for use in their business at no cost to Defendants.

202.     Plaintiff and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

203.     By seeking to represent the interests of the members of the Rule 23 Classes, Plaintiff is exercising and intends to exercise his right to engage in concerted activity for the mutual aid or benefit of himself and his co-workers.

204.     Plaintiff is able to fairly and adequately protect the interests of the members of the Rule 23 Classes and has no interests antagonistic to the members of the Rule 23 Classes.

205.     Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

206.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

207.     Upon information and belief, Defendants and other employers throughout the state violate Colorado wage law.  Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation. Former employees are fearful of

29

bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

208.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

209.    The Rule 23 Classes are properly treated as subclasses pursuant to Rule 23(c)(5).

210.    Common questions of law and fact exist as to the Wage Class that predominate over any questions only affecting Plaintiff and the Wage  Class members individually and include, but are not limited to:

    a.    Whether Plaintiff and the Rule 23 Wage Class members were subject to a common expense reimbursement policy;

    b.    Whether Plaintiff and the Rule 23 Wage Class were subject to a policy that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

    c.    Whether Plaintiff and the Rule 23 Wage Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

    d.    Whether Defendants failed to reimburse automobile expenses, gasoline expenses, and other job-related expenses, as described herein, causing Plaintiff and the Rule 23 Wage Class wages to drop below legally allowable minimum wage;

    e.    Whether Defendants collected and maintained records of Plaintiff and the Rule 23 Wage Class members' actual vehicle expenses;

f.      Whether Defendants properly reimbursed Plaintiff and the Rule 23 Wage Class members for their vehicle expenses;

g.      Whether Defendants met the requirements for claiming a tip credit from the wages of the Plaintiff and the Rule 23 Wage Class members;

h.      Whether Defendants failed to pay Plaintiff and the Rule 23 Wage Class all wages earned by them;

i.      Whether Plaintiff and the Rule 23 Wage Class members were subject to a common policy that required them to provide cellphones to use when completing deliveries for Defendants; and

j.      Whether Plaintiff and the Rule 23 Wage Class members were subject to a common cellphone expense reimbursement policy;

k.      The nature and extent of class-wide injury and the measure of damages for those injuries.

211. Common questions of law and fact exist as to the Meal and Rest Break Class that predominate over any questions only affecting Plaintiff and the Meal and Rest Break Class members individually and include, but are not limited to:

a.      Whether Defendants permitted Plaintiff and the Meal and Rest Break Class to take meal breaks as required by law;

b.      Whether the nature of the business activity or other circumstances make an uninterrupted meal period impractical and, if so, whether Defendants permitted the Meal and Rest Break Class to consume an on-duty meal while performing duties;

c.      Whether Defendants permitted Plaintiff and the Meal and Rest Break Class to take rest breaks as required by law; and

d.      The nature and extent of class-wide injury and the measure of damages for those injuries.

31

212.     Common questions of law and fact exist as to the Unjust Enrichment Class that predominate over any questions only affecting Plaintiff and the Unjust Enrichment Class members individually and include, but are not limited to:

a. Whether Plaintiff and the Unjust Enrichment Class members were subject to a common policy that required them to provide cars to complete deliveries for Defendants;

b. Whether Plaintiff and the Unjust Enrichment Class members were subject to a common automobile expense reimbursement policy;

c. Whether Plaintiff and the Unjust Enrichment Class members were subject to a common policy that required them to provide cellphones to use when completing deliveries for Defendants;

d. Whether Plaintiff and the Unjust Enrichment Class members were subject to a common cellphone expense reimbursement policy;

e. Whether Plaintiff and the Unjust Enrichment Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

f. Whether Defendants avoided business expenses they would have otherwise been required to cover but for Plaintiff and the Unjust Enrichment Class providing cars and cellphones to use to make deliveries;

g. How much it would have cost Defendants to operate their business but for Plaintiff and the Unjust Enrichment Class providing cars and cellphones to use to make deliveries;

h. Whether Plaintiff and the Unjust Enrichment Class conferred a benefit on Defendants that Defendants were aware of;

i. Whether Defendants accepted the benefits conferred on them by Plaintiff and the Unjust Enrichment Class;

32

     j.   Whether it would be unjust for Defendants to retain the benefit conferred on them by Plaintiff and the Unjust Enrichment Class without compensating for it;

     k.   The nature and extent of class-wide injury and the measure of damages for those injuries.

213.    In recognition of the services Plaintiff has rendered and will continue to render to the members of the Rule 23 Classes, Plaintiff will request payment of a service award upon resolution of this action.

### CAUSES OF ACTION

### Count 1
**Failure to Pay Minimum Wages - Fair Labor Standards Act**
**(On Behalf of Plaintiff and the FLSA Collective)**

214.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

215.    Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

216.    Defendants failed to properly claim a tip credit from the wages of Plaintiff and the FLSA collective because Plaintiff and the FLSA collective were paid a wage rate lower than Defendants informed them that they would be paid.

217.    Defendants paid Plaintiff and the FLSA Collective at or close to Colorado minimum wage for all hours worked.

218.    Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

219.    In some or all workweeks, after subtracting under-reimbursed vehicle expenses from the wages paid, Plaintiff and the FLSA Collective were denied minimum wage for hours worked as delivery driver.

220.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

221.    Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

222.    As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

## Count 2
### Failure to Pay Minimum Wages - C.R.S. § 8-6-101, *et seq* and 7 CCR §1103-1:1, et seq.,
### (On Behalf of Plaintiff and the Rule 23 Wage Class)

223.    Plaintiff restates and incorporates the following allegations as if fully rewritten herein.

224.    Each Defendant has at all times been an "employer" of Plaintiff and the Rule 23 Wage Class members within the meaning of the Colorado minimum wage law. C.R.S. § 8-6-101, *et seq.*

225.    Defendants failed to pay Plaintiff and the Rule 23 Wage Class members all minimum wages owed.

226.    Defendants took unauthorized deductions from the wages of Plaintiff and the Rule 23 Wage Class members.

227.    Defendants conduct and practices, as described herein, were willful and intentional.

228.    By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiff and the Rule 23 Wage Class members for unpaid wages, costs, reasonable attorneys' fees, and pre-judgment interest for all violations which occurred within the three years prior to the filing of the Complaint.

## Count 3
### Colorado Wage Claim Act - C.R.S. § 8-4-101, *et seq*
### (On Behalf of Plaintiff and the Rule 23 Class)

229.    Plaintiff restates and incorporates the following allegations as if fully rewritten herein.

230.    Each Defendant has at all times been an "employer" of Plaintiff and the Rule 23 Wage Class Members within the meaning of the Colorado Wage Act.

231.    Defendants failed to pay Plaintiff and the Rule 23 Wage Class members in a timely manner as required by C.R.S. § 8-4-103(1).

232.    Defendants have taken unlawful deductions from the wages of Plaintiff and the Rule 23 Wage Class members by failing to properly reimburse for delivery-related expenses. *See* C.R.S. § 8-4-105.

233.    Defendants conduct and practices, as described herein, were willful and intentional.

234.    By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiff and the Rule 23 Wage Class members for unpaid wages, liquidated damages, costs, reasonable attorneys' fees, and pre-judgment interest for all violations which occurred within the three years prior to the filing of the Complaint.

**Count 4**
**7 Colo. Code Regis. § 1103-1, et seq.**
**Unpaid Meal Breaks**
**(On Behalf of Plaintiff and the Meal and Rest Break Class)**

235.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

236.    Defendants' employees were entitled to uninterrupted and duty-free meal breaks for a period of 30 minutes during each shift they worked that exceeds 5 consecutive hours.

237.    Defendants did not allow employees to take meal breaks.

238.    Neither the nature of the business activity or other circumstances make an uninterrupted meal period impractical.

239.    Defendants conduct and practices, as described herein, were willful and intentional.

240.    By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiff and the Meal and Rest Break Class for 30 minutes in unpaid wages for each shift worked that exceeded 5 hours, liquidated damages, costs, reasonable attorneys' fees,

and pre-judgment interest for all violations which occurred within the six years prior to the filing of the Complaint.

**Count 5**
**7 Colo. Code Regis. § 1103-1,** *et seq.*
**Unpaid Rest Breaks**
**(On Behalf of Plaintiff and the Colorado Meal and Rest Break Class)**

241.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

242.     Defendants' employees were entitled to rest breaks for a period of 10 minutes for each four hours of work, or major fractions thereof.

243.     Defendants did not allow employees to take rest breaks.

244.     During shifts lasting between 2 and 6 hours, employees were entitled to at least one 10-minute break.

245.     During shifts lasting between 6 and 10 hours, employees were entitled to at least two 10-minute breaks.

246.     During shifts last between 10 and 14 hours, the employees were entitled to at least three 10-minute breaks.

247.     Defendants conduct and practices, as described herein, were willful and intentional.

248.     By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiff and the Colorado Meal and Rest Break Class for at least 10 minutes in unpaid wages for each shift exceeding 2 hours, liquidated damages, costs, reasonable attorneys'

fees, and pre-judgment interest for all violations which occurred within the six years prior to the filing of the Complaint.

## Count 6
## Unjust Enrichment
### (On Behalf of Plaintiff and the Rule 23 Colorado Unjust Enrichment Class)

249.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

250.    Plaintiff and the Unjust Enrichment Class have conferred a benefit upon Defendants, namely, providing and maintaining tools of the trade for Defendants' benefit.

251.    The tools of the trade include vehicles, insurance for those vehicles, and cellphones.

252.    Defendants knew that Plaintiff and the Unjust Enrichment Class conferred that benefit on Defendants.

253.     As described above, Defendants received benefits as a result of Plaintiff and the Unjust Enrichment Class providing and maintaining tools of the trade.

254.    The benefits include, but are not limited to, direct and indirect financial benefits like increased profits and increased ability to compete on the price of Defendants' products.

255.    Defendants did not compensate or under-compensated Plaintiff and Unjust Enrichment Class for these benefits.

256.    Accordingly, an inequity would result to Plaintiff and Unjust Enrichment Class because of the retention of this benefit by Defendants.

257.     As a result of Defendants having been unjustly enriched, Plaintiff and the Unjust Enrichment Class are entitled to compensation for the value of the benefit Plaintiff and the Unjust Enrichment Class conferred on Defendants.

**WHEREFORE**, Plaintiff Daniel Opperman prays for all of the following relief:

A.      Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B.      Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D.      Designation of Plaintiff as representative of the Rule 23 Classes and counsel of record as Class Counsel.

E.      Declaratory judgment that the practices complained of herein are unlawful under the Colorado Revised Statutes.

F.      An award of unpaid minimum wages, unreimbursed expenses, unlawful deductions, unpaid meal and rest breaks, and liquidated damages due under Colorado wage laws.

G.      An award of restitution for unjust enrichment.

H.      Liquidated damages under the FLSA.

I.      An award of prejudgment and post-judgment interest.

J.      An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

K.      Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

*/s/ Andrew P. Kimble*
Andrew R. Biller
Andrew P. Kimble
Laura E. Farmwald
Biller & Kimble, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*lfarmwald@billerkimble.com*

www.billerkimble.com

and

David Lichtenstein
Law Office of David Lichtenstein, LLC
1556 Williams St., Suite 100
Denver, CO 80218
Telephone: (303) 831-4750
Facsimile: (303) 863-0835
*dave@lichtensteinlaw.com*

***Counsel for Plaintiff  and the putative class***

## **JURY DEMAND**

Plaintiff hereby demand a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

*/s/ Andrew P. Kimble*
Andrew P. Kimble